Kane

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :     CRIMINAL NO. *10-244*

            v.               :     (Judge *Kane*    )

EMMANUEL EKHATOR AND     :
YVETTE MATHURIN

**FILED**
**HARRISBURG, PA**

SEP 0 1 2010

MARY E. D'ANDREA, **CLERK**
Per _____
            **Deputy Clerk**

## INDICTMENT
## COUNT 1
(Criminal Conspiracy to Commit
Mail Fraud, Wire Fraud, and Money Laundering)

THE GRAND JURY CHARGES THAT:

### A. Background

Beginning at a time unknown to the Grand Jury and continuing through approximately August 26, 2010, the defendants, **EMMANUEL ECKHATOR AND YVETTE MATHURIN,** and unindicted co-conspirators known and unknown to the Grand Jury engaged in a "collection" scam targeting law firms in the United States and Canada and involving the use of counterfeit checks.

1.     The defendant, **EMMANUEL EKHATOR,** is a citizen of Nigeria who has sought refugee status in Canada.

2.     The defendant **YVETTE MATHURIN**, resides in Canada.

3.     As used in this Indictment, the term "collection" scam involves the following:

(a)     A co-conspirator contacts a law firm, usually via e-mail, and claims to be a foreign citizen or a representative of a foreign company.

(b)   The co-conspirator represents that he or his company is attempting to collect funds from a North American individual or entity owing monies from a transaction such as a real estate transaction, a divorce settlement, or a tort settlement.

(c)   The co-conspirator represents that he or his company is seeking legal representation from the victim lawyer or law firm for purposes of collecting the monies.

(d)   After agreeing to provide legal representation, the victim lawyer or law firm is contacted by another co-conspirator posing as a representative of the individual or company purportedly owing the monies.   This individual agrees to make payment on the monies owed.

(e)   A co-conspirator, purporting to be a representative of the entity owing the monies, then mails a check that appears to be legitimate to the victim lawyer or law firm via Canada Post, U.S. Mail, or a private courier.

(f)   The information on the check was previously stolen from legitimate companies, with the amount, payee name, and phone number altered.

(g)   If a victim lawyer or law firm contacts the fraudulent phone number printed on the check, a co-conspirator answers the call and fraudulently verifies the amount of the check and its validity.

(h)  The victim lawyer or law firm deposits the check into a trust account and waits for several days until it appears the check has cleared.

(i)  Following instructions from the initial co-conspirator, the victim lawyer or law firm then wires funds to a bank account, usually located in Asia.

(j)  Typically, the fraud is detected when the check is returned because as counterfeit.

4.   As used in this Indictment, the term "catcher" refers to an individual who contacts the victim lawyer or law firm and initiates the purported attorney/client relationship.

5.   As used in this Indictment, the term "runner" refers to an individual who coordinates bank accounts and obtains checks from the individuals who create and draft the counterfeit checks.

B.   The Conspiracy and Its Objects

6.   Beginning at a time unknown to the Grand Jury and continuing through approximately August 26, 2010, within the Middle District of Pennsylvania; the Commonwealth of Massachusetts; the States of Alabama and Georgia; the provinces of Ontario and Quebec, Canada; the countries of Nigeria, the United Kingdom, South Korea, Japan, China, Singapore, and elsewhere, the defendants, **EMMANUEL EKHATOR AND YVETTE MATHURIN**, knowingly and willfully conspired and agreed together and with each other and with others both known and

3

unknown to the Grand Jury, to commit various offenses against the United States.   That is:

(a)   to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises through the use of the United States mail and private couriers, in violation of Title 18, United States Code, Section 1341, mail fraud;

(b)   to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire, radio and television communications in interstate and foreign commerce, writings, signals, pictures and sounds in violation of Title 18, United States Code, Section 1343, wire; and

(c)   knowing that the property involved in a financial transaction represents the proceeds of unlawful activity, to conduct and attempt to conduct a financial transaction which involves the proceeds of a specified unlawful activity, knowing that the transaction is designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, in violation of Title 18, United States Code, Section 1956, money laundering.

## C. Manner and Means of the Conspiracy and Scheme and Artifice to Defraud

7.    It was part of this conspiracy and scheme and artifice to defraud that the defendants, **EMMANUEL EKHATOR AND YVETTE MATHURIN,** and others known and unknown to the Grand Jury agreed to obtain money and property; to wit, more than $29 million in actual loss from over 70 victim lawyers and law firms and more than $100 million in attempted loss from approximately 300 additional victim lawyers and law firms, through a "collection" scheme as described herein.

8.    The role of the defendant, **EMMANUEL EKHATOR,** in this scheme included, but was not limited to, the following:

(a)   Coordinating the scam by transmitting information, usually via e-mail, between the "catchers" and the "runners". This ensured that the "runner" sent counterfeit checks to the victim. Moreover, when the victim cashed the counterfeit check, the "catcher" instructed the victim to send the resulting funds to a specified bank account, thus enabling the scammers to obtain the funds;

(b)   Providing information to the counterfeiters to use in making the counterfeit checks and sending them to the victims;

(c)   Receiving notification that a counterfeit check had been sent to a victim and relaying this information to a "catcher", thus enabling the "catcher" to communicate with the victim; and

(d)   Receiving information concerning the bank where the funds from the counterfeit check were to be deposited and relaying this information to the victim.

9.   The role of the defendant, **YVETTE MATHURIN,** in this scheme included, but was not limited to, representing herself to be a bank employee who falsely validated the amount of the check and its authenticity when a victim lawyer or law firm called the fraudulent telephone number listed on the counterfeit check.

**D.   Overt Acts**

The preceding paragraphs of this Indictment are incorporated into this section of the Indictment as if fully set out herein.

10.   In August, 2008, a co-conspirator using the name "Wang Chung" contacted Attorney Richard Gan, Carlisle, Pennsylvania, via e-mail, and solicited legal representation, claiming that he worked for Jye Tai Precision, Industrial Co., Ltd., a Taiwanese company that was purportedly owed money by A&H Enterprises.

11.   On August 7, 2008, a co-conspirator caused a counterfeit Citibank check in the amount of $297,900 purportedly drawn on an A&H Enterprises account, to be mailed via UPS from Canada to Gan, which check Gan deposited into his bank account on August 11, 2008.

12.   On August 13, 2008, upon instructions from a co-conspirator, Gan wired $244,278 to account 650-006463-244 at the Korea Exchange Bank.

6

13.  On August 4, 2008, an e-mail account controlled by the defendant, **EMMANUEL ECKHATOR,** received an e-mail containing bank account numbers to be used to receive fraud proceeds.  One of those numbers is the account number to which Gan wired $244,278.

14.  On February 16, 2009, Michael Jackson of the law firm of Wallace, Jordan, Ratcliff and Brandt LLC, Birmingham, Alabama, received an e-mail from a co-conspirator using the name "Hiraku Toshio" and claiming to be the chief executive officer for the Nissen Company Limited.  The e-mail requested assistance in collecting debts from North American clients.  The firm agreed to represent the purported client.

15.  The victim law firm then received an e-mail from a co-conspirator who claimed to be a representative of Thompson Global Financial who represented that the firm owed Nissen Company $970,000.  The co-conspirator stated that an official check for $236,710 for the first installment on the debt had been sent.

16.  On February 24, 2009, an e-mail account controlled by the defendant, **EMMANUEL ECKHATOR,** received an e-mail from a co-conspirator identifying Wallace, Jordan, Ratcliff and Brandt LLC as a potential target and specified the $970,000 figure.

17.  A co-conspirator caused a counterfeit check to be mailed via FedEx and on February 25, 2009, Wallace, Jordan, Ratcliff and Brandt LLC received a FedEx envelope that contained what appeared to be an official Citibank check for $236,710.

18.   A co-conspirator e-mailed instructions to the victim law firm telling Jackson to keep $25,000 as a retainer and $30,772 for a service charge and to wire $180,937 to the Korea Exchange Bank.

19.   On February 26, 2009, an e-mail account controlled by the defendant, **EMMANUEL ECKHATOR,** sent an e-mail to an e-mail account controlled by the defendant, **YVETTE MATHURIN,** containing the amount of the check sent to the victim law firm and the last four digits of the check number.

20.   An employee of the victim law firm called the phone number printed on the check and spoke with a woman believed to be the defendant, **YVETTE MATHURIN,** who stated the check was valid.

21.   The victim law firm then deposited the check into its trust account and wired $180,937.70 to a Korea Exchange Bank account provided to them by the co-conspirator using the name "Hiraku Toshio."

22.   On February 27, 2009, an e-mail account controlled by the defendant, **YVETTE MATHURIN,** sent an e-mail to an account controlled by the defendant, **EMMANUAL ECKHATOR,** stating that Wallace, Jordan, Ratcliff and Brandt had been verified.

23.   On February 28, 2009, a co-conspirator sent an e-mail to an account controlled by the defendant, **EMMANUEL ECKHATOR,** forwarding the wire transfer information that Wallace, Jordan, Ratcliff and Brandt had sent to a co-conspirator's e-mail account.

24.  On February 6, 2009, an e-mail account controlled by the defendant, **EMMANUEL ECKHATOR,** received an e-mail from a co-conspirator with account information for a Korea Exchange Bank account to which victim funds were to be wired.  This is the same account provided to Wallace, Jordan, Ratcliff and Brandt and to which this victim law firm wired funds.

25.  On February 28, 2009, an e-mail account controlled by the defendant, **EMMANUEL ECKHATOR,** sent an e-mail back to this co-conspirator with the wire information.

26.  In December, 2009, a co-conspirator using the name "Manny Chen" contacted Attorney Anthony T. McBeth, Harrisburg, Pennsylvania, via e-mail, and represented that he needed legal counsel to obtain a $350,000 settlement from JOM Freight, York, Pennsylvania.

27.  On January 12, 2010, a co-conspirator caused a counterfeit Citibank check, purportedly drawn on a JOM Freight account, to be mailed to McBeth via DHL from Toronto, Canada, to Harrisburg, Pennsylvania.  This check was received on January 12, 2010.

28.  On January 2010, upon instructions from a co-conspirator, McBeth wired $270,000 to account 050312928 at A B N AMRO Bank, in Singapore.

29.  On November 23, 2009, an e-mail account controlled by the defendant, **EMMANUEL EKHATOR,** sent an e-mail to an account believed

9

to be controlled by a counterfeiter with information to be placed on counterfeit checks. The information included the same phone number and account number as the counterfeit check sent to McBeth.

30. On December 6, 2009, an e-mail account controlled by the defendant, **EMMANUEL EKHATOR,** received an e-mail from a suspected "catcher" providing information for account 050312928 A B N AMRO Bank, Singapore, the account into which McBeth wired funds.

31. On March 20, 2010, an e-mail account controlled by the defendant, **EMMANUEL EKHATOR,** sent an e-mail to an account believed to be controlled by another "catcher" providing information for the same account.

32. On January 27, 2010, a co-conspirator contacted Attorney Gene Goldenziel, Scranton, Pennsylvania, via e-mail and represented that he needed legal counsel to obtain a $400,000 settlement from JOM Freight, York, Pennsylvania.

33. On February 28, 2010, a co-conspirator caused a counterfeit Citibank check for $400,000, purportedly drawn on a Met Life account, and a letter, to be mailed via U.S. Mail from Atlanta, Georgia to Goldenziel in Scranton, Pennsylvania. This check was received on February 9, 2010.

34. On February 5, 2010, an e-mail account controlled by the defendant, **EMMANUEL EKHATOR,** sent an e-mail to an account controlled by a suspected counterfeiter containing the wording of

10

the letter that was mailed to **GOLDENZIEL** with the counterfeit check.

35.  On that same date, an e-mail account controlled by the defendant, **EMMANUEL ECKHATOR,** sent an e-mail to a suspected counterfeiter containing the information, including the payee name, account, and routing number, that was contained on the counterfeit check received by Goldenziel.

36.  On February 8, 2010, an e-mail account controlled by the suspected counterfeiter sent an e-mail to the account controlled by the defendant, **EMMANUEL ECKHATOR,** reporting that he had sent the check and providing the U.S. Mail Tracking Number.

37.  On that same date, an e-mail account controlled by the defendant, **EMMANUEL ECKHATOR,** sent an e-mail to an account controlled by the defendant, **YVETTE MATHURIN,** listing Goldenziel's firm name, the amount of the check, check number and USPS tracing number.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-6
### (Mail Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.   The  allegations  contained  within  Count  1  of  this Indictment  are  incorporated  in  Count  2  through  as  if  fully  set forth herein.

2.   In  furtherance  of  the  scheme  and  artifice  to  defraud described  in  Count  1  of  this  Indictment,  on  or  about  the  dates  set forth  below,  in  the  Middle  District  of  Pennsylvania  and  elsewhere, the  defendants,  **EMMANUEL  ECKHATOR  AND  YVETTE  MATHURIN,**  aided  and abetted  by  each  other  and  by  others  known  and  unknown  to  the  Grand Jury,  did  knowingly  cause  any  matter  or  thing  to  be  sent,  delivered and  moved  by  the  United  States  Postal  Service,  private  and interstate  carriers,  to  and  from  the  addresses  set  forth  below, according  to  the  direction  thereon:

| COUNT | DATE | MAILING | FROM | TO | CONTENTS |
|---|---|---|---|---|---|
| 2 | 08/07/08 | UPS Package Tracking #1Z23RW836634574376 | Brampton, Ontario, Canada | Gan Law Group Carlisle, PA | $297,900.00 counterfeit check |
| 3 | 02/25/09 | FedEx Package Unknown Tracking | Unknown | Wallace, Jordan, Ratcliff and Brandt Birmingham, AL | $236,710.00 counterfeit check |

| 4 | 03/02/09 | FedEx Package Tracking #86689676767780 | Unknown | Wallace, Jordan, Ratcliff and Brandt Birmingham, AL | $289,750.00 counterfeit check |
| 5 | 01/12/10 | DHL Package Tracking #7397109764 | Toronto, Canada | Anthony McBeth, Harrisburg, PA | $350,000.00 counterfeit check |
| 6 | 02/08/10 | USPS Express Tracking #EH646090998US | Atlanta, GA | Gene Goldenziel, Scranton, PA | $400,000.00 counterfeit check |

All in violation of Title 18, United States Code, Section 1341
and Section 2.

13

## COUNTS 7-16

### (Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.   The allegations contained within Counts 1 through 6 of this Indictment are incorporated in Counts 7-16 as if fully set forth herein.

2.   In furtherance of the scheme and artifice to defraud described in Count 1 of this Indictment, on or about the dates set forth below, in the Middle District of Pennsylvania and elsewhere, the defendants, **EMMANUEL ECKHATOR AND YVETTE MATHURIN,** aided and abetted by each other and by others known and unknown to the Grand Jury, did knowingly transmit, cause to be transmitted and attempt to transmit, in interstate and foreign commerce, by means of wire communication, certain signs, signals and sounds; that is, telephone communications, facsimile communications, and e-mail from and between the Middle District of Pennsylvania and elsewhere as set forth below:

| 7 | 08/08/08 | Electronic mail | wang@ mail-jyetai. com | ganlaw1@ embarqmail. com Richard Gan, Carlisle, PA | Account information wire transfer |
| 8 | 08/13/08 | Wire transfer | M&T Bank Carlisle, PA | Korea Exchange Bank South Korea | $244,278.00 wire transfer |

| 9 | 02/16/09 | Electronic mail | Hirakutoshio44@yahoo.co.jp | mjackson@wallacejordan.com | solicitation |
|---|---|---|---|---|---|
| 10 | Between 02/25/08 and 02/27/08 | Telephone call | Michael Jackson, Birmingham, AL | 1-800-399-9714 | check verification |
| 11 | 02/27/09 | Wire transfer | First Commercial Bank, Birmingham, AL | Korea Exchange Bank South Korea | $180,937.70 wire |
| 12 | 01/05/10 | Electronic mail | mcmchen9@gmail.com | atmlaw1@verizon.net Anthony McBeth, Harrisburg, PA | solicitation |
| 13 | 01/20/10 | Telephone call | Anthony McBeth, Harrisburg, PA | 1-888-211-9789 | check verification |
| 14 | 01/20/10 | Wire transfer | M&T Bank, Harrisburg, PA | ABN AMRO Bank Singapore | $275,000.00 wire |
| 15 | 01/27/10 | Electronic mail | choi.minyong@yahoo.com | ngplaw@yahoo.com Gene Goldenziel Scranton, PA | solicitation |
| 16 | 02/10/10 | Telephone call | Gene Goldenziel, Scranton, PA | 1-888-211-9789 | check verification |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

*Peter J. Smith*

PETER J. SMITH
United States Attorney

Dated: 9-1-2010